IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Michelle Hoggard,

Plaintiff,

v.

Walmart, Inc. d/b/a Walmart Store #1183 a/k/a Walmart,

Defendant.

C/A No. 3:25-cv-04290-JFA

**MEMORANDUM OPINION AND ORDER**

This matter is currently before the Court on Defendant's Motion for Summary Judgment as to all of Plaintiff's claims. (ECF No. 18). This matter has been fully briefed and is ripe for review. (ECF Nos. 18, 19 & 21). For the reasons stated herein, Defendant's Motion for Summary Judgment is granted in full.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a "slip and squat" that took place in a West Columbia Walmart on June 10, 2022. (ECF No. 1, ¶ 8). Plaintiff alleges that she was walking down the beer and wine aisle (Aisle A33) when she slipped on a wet substance on the floor. *Id.*; (ECF No. 19-1, p. 33). Plaintiff seeks actual, incidental, consequential, and punitive damages. (ECF No. 1, ¶ 12-14).

In her deposition, Plaintiff recalled that when she slipped, her left foot started to go ahead of her, so she tried to use her right foot to stabilize herself and fell into a squat position. (ECF No. 18-3, p. 13). Plaintiff used the shopping cart to push herself back to standing. *Id.* Other than her feet, no part of Plaintiff's body touched the ground, and she

did not recall striking any shelving. *Id.* at 13–15. Plaintiff did not see any substance on the floor until after she slipped. *Id.* at 14. After her fall, Plaintiff observed "a pretty large spill" that was the same color as the floor. *Id.*

The store's surveillance cameras do not show the floor of the aisle at issue; however, the footage captures people entering and exiting Aisle A33. (ECF No. 18-1, p. 3). Plaintiff first comes into view on the surveillance footage at 6:44:16 p.m. *Id.* at 4. Plaintiff's head is out of sight of the camera from 6:44:30 to 6:44:34, when Plaintiff's slip allegedly occurred. *Id.*

Madison Faucette, a Walmart maintenance associate on duty during the time of the incident, performed a "safety sweep" and dry mopped Aisle A33 at 5:55 pm—fifty minutes before the incident. (ECF No. 18-7, ¶¶ 3, 6). At 6:40 pm, approximately forty-five minutes later and four minutes before the incident, Faucette walked past Aisle A33, but she did "not look directly down the aisle." *Id.* ¶ 8. At that time, there were two customers on Aisle A33—neither of whom "got [her] attention to alert [her] to any spill on the aisle." *Id.* Four minutes later, at 6:44 pm, Plaintiff walked down the aisle and the incident occurred, as described above.

Defendant filed this Motion for Summary Judgment alleging that Plaintiff offered no evidence from which a jury could do anything but speculate as to whether Defendant had constructive knowledge of the hazard. (ECF No. 18-1, p. 16). Alternatively, Defendant moved for partial summary judgment on two issues: (1) medical damages because Plaintiff failed to identify a medical expert, (ECF No. 18, p. 1), and (2) punitive damages, (ECF No. 18, p. 14–15).

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. DISCUSSION

Sitting in diversity, this court must apply South Carolina law as it is interpreted by the state's highest court. *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022). In South Carolina, to prevail on a negligence claim, a plaintiff must prove "(1) a duty of care

owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damage proximately resulting from the breach of duty." *Charleston Dry Cleaners & Laundry v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003). In a premises liability case, a property owner's duty of care depends on whether the plaintiff was an invitee, licensee, or trespasser. *Sims v. Giles*, 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct. App. 2001). Here, it is undisputed Plaintiff was an invitee. (ECF No. 19, p. 3).

A property owner owes business visitors or invitees the duty of exercising reasonable and ordinary care for their safety and is liable for any injuries resulting from a breach of such duty. *Larimore v. Carolina Power & Light*, 340 S.C. 438, 445–46, 531 S.E.2d 535, 538 (Ct. App. 2000) (quoting *Israel v. Carolina Bar–B–Que, Inc.*, 292 S.C. 282, 289, 356 S.E.2d 123, 128 (Ct. App.), *cert denied*, 293 S.C. 406, 360 S.E.2d 824 (1987)).

A merchant property owner is not "an insurer of the safety of its customers" but rather owes them a duty to exercise or maintain care and to keep the premises in a reasonably safe condition. *Pennington v. Zayre Corp.*, 252 S.C. 176, 178, 165 S.E.2d 695, 696 (1969). The merchant is not required to maintain the premises in such condition that no accident could ever happen to a patron. *Denton v. Winn–Dixie Greenville,* 312 S.C. 119, 120, 439 S.E.2d 292, 293 (Ct. App. 1983); *Bernstein v. Walmart, Inc.*, 715 F. Supp. 3d 782, 787 (D.S.C. 2024). Generally, "reasonable and ordinary care" means that the landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has actual or constructive notice. *Larimore*, 340 S.C. at 445, 531 S.E.2d at 538. "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes

the invitee's injuries. If that superior knowledge is lacking . . . the invitor cannot be held liable." *Larimore*, 340 S.C. at 448, 531 S.E.2d at 540 (internal citation omitted).

Thus, to recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, Plaintiff must show either (1) that the injury was caused by a specific act of Defendant which created the dangerous condition; or (2) that Defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it. *Wintersteen v. Food Lion,* 344 S.C. 32, 35, 542 S.E.2d 728, 729 (2001). Plaintiff makes no suggestion that Defendant or its agents caused the spill or that Defendant had actual notice of the spill. Instead, at issue is whether Defendant had constructive notice of the hazard. To survive summary judgment, Plaintiff must identify some evidence that would allow a reasonable jury to find that Defendant had constructive notice of the hazard.

The mere presence of a foreign substance is insufficient to establish constructive notice. *Calvert v. House Beautiful Paint & Decorating Ctr., Inc.*, 313 S.C. 494, 496, 443 S.E.2d 398, 399 (1994). A plaintiff "can establish the storekeeper's constructive knowledge of the dangerous condition by showing that the foreign substance had been on the floor for a sufficient length of time that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." *Gillespie v. Wal-Mart Stores, Inc.*, 302 S.C. 90, 91, 394 S.E.2d 24, 24–25 (Ct. App. 1990) (citing *Wimberly v. Winn-Dixie Greenville, Inc.*, 252 S.C. 117, 122, 165 S.E.2d 627, 629 (1969)); *Diaz v. Waffle House, Inc.*, No. 4:23-cv-00045-JDA, 2026 WL 74095, at *6 (D.S.C. 2026).

Plaintiff argues that the jury must determine whether Defendant had constructive notice of the spill based on the fifty-minute period between the "safety sweep" and the

incident. (ECF No. 19, p. 7). However, South Carolina law does not permit a jury "to speculate that [a foreign substance] was on the floor for such a length of time as to infer that [the] defendant was negligent in failing to detect and remove it." *Wimberly*, 252 S.C. at 122, 165 S.E.2d at 629; *Graham v. Wal-Mart Stores E., L.P.*, No. 6:23-cv-04523-HMH, 2024 WL 3238046, at *3–4 (D.S.C. 2024) (noting that to determine whether the liquid had been on the floor for over an hour – as opposed to a few minutes – would require a jury to engage in impermissible speculation), *appeal dismissed*, No. 24-1701, 2024 WL 5347222 (4th Cir. 2024).

In *Graham*, the district court granted the defendant's summary judgment motion because the plaintiff offered no evidence of the duration of the spill, as required to establish constructive notice. *Id.* at *3. There, the record evidence indicated that the liquid was "thick" and "cloudy," track marks were present, and the surveillance footage showed no evidence of the spill occurring in the hour preceding the incident. *Id.* Based on that evidence, the plaintiff asked the court to "infer" that the liquid had been on the floor for longer than an hour. *Id.* South Carolina law "foreclosed" that argument because it would have forced the jury to speculate about the length of time the spill was on the floor. *Id.*

Here, the lack of evidence and resulting need for speculation is even greater. The liquid is clear. (ECF No. 18-3, p. 14). There are no track marks. *Id.* And video surveillance footage does not show the floor. *Id.* Although the fifty-minute window between Faucette's "safety sweep" and the incident aids in determining the possible length of time the spill was on the floor, the record evidence still requires prohibited speculation. Beyond identifying that window, Plaintiff offers no evidence from which the jury could ascertain

the duration of the spill without engaging in impermissible speculation.

Plaintiff argues that this fifty-minute window removes any need for speculation and makes *Wintersteen* inapposite. (ECF No. 19, p. 8). Nothing in *Wintersteen* limits its holding to cases that are devoid of any evidence of the duration of the hazard. *Wintersteen* applies whenever jurors must speculate as to whether the hazard was on the floor for a sufficient duration such that the storekeeper, in the exercise of ordinary care, would or should have discovered and removed it. *See Wintersteen v. Food Lion, Inc.*, 336 S.C. 132, 136, 518 S.E.2d 828, 830 (Ct. App. 1999), *aff'd*, 344 S.C. 32, 542 S.E.2d 728 (2001) ("Thus, while the liquid could have been on the floor for an extended period of time, it is just as possible that it had been on the floor for only moments before [plaintiff] fell."); *Brown v. BI-LO Grocery Store*, No. 3:20-cv-161-JFA, 2021 WL 1060094, at *2 (D.S.C. 2021).

Here, if anything, the fifty-minute window only reduces the probability that the liquid could have been on the floor for an *extended* period of time. Plaintiff's burden requires putting forth evidence that eliminates speculative determinations of duration. More specifically, the impermissible speculation is not about duration in the abstract, but about whether the hazard was on the floor for "a sufficient length of time that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." *See Gillespie*, 302 S.C. at 91, 394 S.E.2d at 24–25; *Wintersteen*, 336 S.C. 132 at 136, 518 S.E.2d at 830. The evidence in the record shows the spill existed for fifty minutes at most. However, the precise duration is unknown, and thus, a jury could make no determination about constructive notice without speculation as to the length of time

the spill was on the floor.

Plaintiff argues that Defendant's "clean as you go" floor-care policy supplants South Carolina law and imposes a continuous duty or at least that the policy precludes summary judgment. (ECF No. 19, p. 9). At this stage, Plaintiff gives undue weight to Defendant's safety and maintenance policies and practices. Without first setting forth some evidence of the length of time that the substance was on the floor, the specifics of Defendant's maintenance policies and practices offer no refuge for Plaintiff's claims.

Plaintiff argues that Faucette "should have known" of the substance on the floor when she walked by Aisle A33 at 6:40 pm because she should have looked down Aisle A33. (ECF No. 19, p. 10). However, South Carolina law is clear: an employee's presence in the vicinity of a spill does not alone create an inference of notice. *Gillespie*, 302 S.C. at 91, 394 S.E.2d at 25; *Pennington v. Zayre Corp.*, 252 S.C. 176, 178–79,165 S.E.2d 695, 696 (1969). The "mere fact" that a hazard was on the floor and was "within the field of vision of a nearby store employee" at the time of the incident "is not by itself enough evidence" to charge the shopkeeper with negligence. *Gillespie*, 302 S.C. at 91, 394 S.E.2d at 25. Instead, the essential question remains "whether the [spill] was on the floor for such a length of time as to infer that [the shopkeeper] was negligent in not discovering and removing" the spill, and that question is one that cannot be "left to speculation." *Id.* at 92, 394 S.E.2d at 25.

Plaintiff attempts to distinguish *Gillespie* based on the existence of maintenance policies, but this distinction means nothing without some non-speculative evidence of when the spill occurred. *Gillespie* involved a store employee who was *present at the time*

the incident occurred. *Gillespie*, 302 S.C. at 91, 394 S.E.2d at 25. Faucette was not present at the time the incident occurred. In *Gillespie*, even when the hazard was visible to the employee at the time the incident occurred, summary judgment was appropriate because the duration of the hazard's existence was "left to speculation." *Id.* at 92, 394 S.E.2d at 25. Here, Plaintiff offers no evidence that the substance was on the floor at the time Faucette was in the vicinity—arguing only that if it had been, she should have cleaned it. Even if, as Plaintiff argues, Walmart's "clean as you go" floor-care policy is relevant to the issue of constructive notice, "clean up" would only be required *if* the substance was on the floor. Plaintiff offers no evidence to resolve that "if," requiring the exact speculation that the law prohibits. Therefore, the maintenance policies and practices are irrelevant to the issue of constructive notice without first drawing speculative conclusions as to the duration of the hazard.

This is not to suggest that Defendant's maintenance policies and practices can never raise a dispute of material fact in a slip and fall case—only that they do not do so here. Plaintiff is correct in stating that those policies may, in some instances, be relevant to determining the standard of care. (ECF No. 19, p. 10–11). Plaintiff admits that Defendant's policies "do not themselves fix the legal standard of care." (ECF No. 19, p. 10–11). Although, "[w]hat is usually done may be evidence of what ought to be done," *Texas & P. Ry. Co. v. Behymer*, 189 U.S. 468, 470 (1903), the relevance of policy and practice speaks to issues of breach, not duty. Without a duty, there can be no breach, and a shopkeeper's duty arises only when they cause the hazard or have actual or constructive knowledge of the hazard. *See Wintersteen*, 344 S.C. at 35, 542 S.E.2d at 729. As Plaintiff concedes, the

question is whether Defendant should have discovered and remedied the hazard. (ECF No. 19, p. 10–11). As discussed, to answer the question of constructive notice, Plaintiff must first put forth evidence of the length of time that the substance was on the floor. *See Gillespie*, 302 S.C. at 91, 394 S.E.2d at 25. Plaintiff has not done so. Because constructive notice cannot arise out of mere proximity to the incident location and speculative determinations of the duration the hazard was on the floor, Plaintiff has failed to carry its burden and summary judgment is appropriate.

Additionally, Plaintiff includes several arguments about the sufficiency of evidence put forth by Defendant. Because Plaintiff, not Defendant, bears the burden of establishing constructive notice, none of those arguments rectify the absence of evidence to establish constructive notice. Yet, to ensure this Court's diligence, each is discussed in turn.

First, Plaintiff argues that Faucette's declaration and deposition testimony are inadmissible or inappropriate to consider at this stage because they are not based on personal knowledge. (ECF No. 19, ¶¶ 10, 11). Defendant argues that it is admissible as evidence of habit. (ECF No. 21, p. 7). Neither party disputes that Faucette did not remember the events of June 10 before reviewing the video surveillance footage. (ECF No 19, p. 13). Her declaration, as written, indicates that she still has no independent recollection of June 10. (ECF No. 18-7, ¶ 5). Plaintiff distinguishes Faucette's testimony in her deposition as a deduction based on the "kind of person Faucette believes herself to be," not a statement based on personal knowledge. (ECF No. 19, p. 13 ("[T]he word 'know' may be strong language," and . . . she had instead "deduced that it just doesn't make sense for me, the kind of person I am, to just ignore a spill.")). Taken after her review of the store's video

surveillance footage, Faucette's declaration and testimony, if nothing else, speak to her personal knowledge of her habit, routine, and practices. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

Yet, the result of this motion does not turn on whether this evidence is admissible or appropriate because if, as Plaintiff argues, this evidence is not appropriate for consideration at this time, the jury would be required to engage in even more extensive speculation than with its inclusion. Plaintiff, not Defendant, bears the burden of proof at this stage. *See Norris v. Wal-Mart Stores E., L.P.*, No. 1:12-cv-02592-JM, 2014 WL 496010, at *6 (D.S.C. 2014) ("[E]ven if the court ignores Defendant's suggestion regarding what the surveillance videos show, the result is that there is no evidence in the record showing how long the substance was on the floor prior to Plaintiff's fall. Without such evidence in the record, Plaintiff cannot meet her burden of establishing constructive notice . . . ."). Disregarding this evidence does not create a genuine dispute of material fact or preclude summary judgment: its omission only exacerbates Plaintiff's speculation problem because Plaintiff offered no evidence of the length of time the substance was on the floor.

Second, Plaintiff alleges that Defendant relies on two improper inferences at this stage: (1) the lack of track marks as evidence that the substance had not been on the floor for a long period of time and (2) Faucette's dry mop would necessarily have encountered the substance had it been present at 5:54 during the "safety sweep." (ECF No. 19, p. 11). Plaintiff is correct that all inferences must be viewed in a light most favorable to the non-moving party. However, omission of the first inference in favor of the Defendant does not eliminate the need for speculation, and ignoring the second inference only requires greater

speculation as to the duration of the hazard. Thus, neither resolves the flaws in Plaintiff's evidence.

Although track marks are circumstantial evidence that may be probative of a spill's duration, an inference about the lack of track marks does not rectify the need for speculation in this case. Taken as true, Plaintiff's argument that the "absence of track marks is equally consistent with a clear, low-viscosity spill that would leave no mark" does not offer any evidence about the duration of the spill. At best, it cuts against Defendant's claim about the probative value of the absence track marks. Yet, Plaintiff bears the ultimate burden and must establish constructive notice. Defendant need not establish lack of constructive notice on its own, and this argument does nothing to remove the need for improper speculation.

The second inference meets the same fate. Whether the dry mop would "necessarily have encountered the substance" an hour before the incident does nothing to establish whether the substance was present for a length of time necessary to establish constructive notice. At best, it indicates that the substance was on the floor for some time less than fifty minutes. Ignoring this inference, as Plaintiff requests, only increases the need for speculation as to the duration of the spill.

In conclusion, Plaintiff offers no evidence to show whether the liquid had been on the floor for fifty minutes or just a few seconds. Any determination that the foreign substance had been on the floor for a "sufficient length of time that the storekeeper would or should have discovered and removed it in the exercise of ordinary would be speculative." *See Gillespie*, 302 S.C. at 91, 394 S.E.2d at 24–25 (citing *Wimberly*, 252 S.C. at 122, 165 S.E.2d at 629). Because Plaintiff has not offered evidence from which the jury could

ascertain the duration of the hazard without engaging in impermissible speculation, Plaintiff has failed to present a genuine issue of material fact as to whether Defendant placed the liquid on the floor or had any knowledge, either actual or constructive, of its presence prior to the incident. Therefore, Defendant is entitled to summary judgment. Consequently, Defendant's alternate arguments for partial summary judgment are moot and need not be addressed.

## IV. CONCLUSION

For all of the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 18) is granted, and this case is dismissed with prejudice.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

September 9, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge